AO106 (Rev. 7/87) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

_____**SOUTHERN**_____    DISTRICT OF    _____**CALIFORNIA**_____

FILED

08 JUL 10 AM 8:08

SOUTHERN DISTRICT COURT
DISTRICT OF CALIFORNIA

BY:  _____ DEPUTY

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be

Premises known as:
4962 Logan Avenue Apartment #2
San Diego, California 92113

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

Case Number:  **08 MJ 2082**

I, _____Special Agent Jamie S. Arnold_____ being duly sworn depose and say:

I am a(n) _____Special Agent of the Federal Bureau of Investigation (FBI)_____ and have reason to believe

Official Title

that ☐ on the person of or    x   on the property or premises known as (name, description and/or location)

in the _____SOUTHERN_____ District of _____CALIFORNIA_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

Property that constitutes evidence of the commission of a criminal offense, contraband, the fruits of crime, things otherwise criminally possessed and property designed and intended for use and which is and has been used as the means for committing a criminal offense.

concerning a violation of Title  8  United States code, Section(s)  1324

The facts to support a finding of Probable Cause are as follows:

See Attachment A

Continued on the attached sheet and made a part hereof:    x   Yes    ☐ No

Signature of Affiant

Sworn to before me and subscribed in my presence,

7/9/08

Date **WILLIAM McCURINE, JR.
U.S. MAGISTRATE JUDGE**

Name and Title of Judicial Officer

at  San Diego, CA

City and State

Signature of Judicial Officer

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**AFFIDAVIT IN SUPPORT OF APPLICATION**

I, Jamie S. Arnold, a Special Agent of the United States Federal Bureau of Investigation (FBI) being duly sworn, declare and state:

I

**INTRODUCTION**

1.    I have been employed by the FBI for over four years, and have been assigned to work Alien Smuggling Investigations since January, 2008.  Prior to my employment with the FBI, I served as a Judge Advocate General for the United States Marine Corps for approximately four years.   During the course of my employment as an FBI Special Agent, I have employed or have been involved in investigations that employed various investigative techniques including physical surveillance, cooperating witnesses, consensual recordings, search warrants, Title III electronic intercepts, undercover operations, pen registers, trash covers, mail covers and grand jury proceedings.

2.    As a Special Agent with the FBI, I have participated in alien smuggling investigations along with FBI and United States Border Patrol (USBP) Agents and Customs and Border Protection (CBP) Enforcement Officers.  These investigations explored: (1) the unlawful bringing in and transportation of illegal aliens into the United States and within the borders of the United States; and (2) conspiracies associated with alien smuggling, such as aiding and abetting and money laundering in violation of Title 8 U.S.C. Section 1324.   During these investigations,  I have actively participated in debriefing defendants, witnesses, and informants; conducting surveillance; executing search and arrest warrants; and making arrests for alien smuggling-related offenses.

3.    Through my training, experience, and interaction with FBI and USBP Agents, I have become familiar with the methods employed by alien smugglers to smuggle, safeguard,

1  and distribute aliens, and to collect and launder alien smuggling proceeds.  These methods

2  consistently generate many types of evidence such as those included in Attachment B.

3

4                                              II

5                              **PURPOSE OF AFFIDAVIT**

6        4        This affidavit is submitted in support of the issuance of a search warrant for the

7  residence located at 4962 Logan Avenue, apartment #2, San Diego, California 92113 (herein

8  and after referred to as the "**TARGET RESIDENCE**").

9        5.       Affiant has personally surveilled the **TARGET RESIDENCE** and it is described as

10 follows: The **TARGET RESIDENCE** is located within the Arbor Village Apartment complex at

11 4938 Logan Avenue, San Diego, California.  The apartment complex is comprised of several

12 individual and detached two story buildings with each building numbered separately.  The

13 **TARGET RESIDENCE** is found on the first floor of the building numbered 4962 and is labeled

14 apartment #2.  The number "2" is centered and affixed to the door of that residence which is

15 painted green.  The color of the building is beige and there are two apartments per floor per

16 building.  There is a set of concrete stairs in the center of each building, running perpendicular.

17  The entire complex is located on the north side of Logan Avenue and the doors of each

18 apartment face to the north, centered around a courtyard.  Each apartment contains a sliding

19 glass door that on the top floor leads to a balcony and the ground floor lead to a small fenced-

20 in patio.  Photographs of the residence are included as Attachments A-1, A-2, A-3 and are

21 incorporated herein by reference.

22        6.       The evidence to be searched for and seized is listed in attachment B to the

23 applicable search warrants applications, incorporated herein.

24        7.       The following is based on my own investigation, oral and written reports by other

25 law enforcement officers, physical and electronic surveillances, interviews, subpoenaed and

26 public records, data base checks, searches, and phone analysis.  Since this affidavit is for a

27 limited purpose, I have not included every fact known about this investigation.  I set forth only

28

1  facts necessary to establish foundation for the requested search warrant. Dates and times are
2  approximate.

3                                          III

4                                   **BACKGROUND**

5       8.       On May 31, 2008, Border Patrol Agents assigned to the Imperial Beach Border
6  Patrol station arrested an individual for acting as a guide for a group of five undocumented
7  aliens from Mexico into the United States. The individual was arrested and transported to the
8  Imperial Beach Border Patrol station for a subsequent interview. During the interview the
9  individual revealed that he works as a foot-guide for an alien smuggling organization run by a
10  smuggler known by the moniker of "Chinolas." The individual stated this was his third time
11  being arrested as a foot-guide. The individual stated on May 30, 2008, he successfully
12  smuggled a group of five undocumented aliens from Mexico into the United States. The
13  individual stated he received $200 US dollars for each of the undocumented aliens as
14  payment. The individual stated that on May 30, 2008, once he successfully crossed into the
15  United States, he contacted a smuggler later identified through photographs as Miguel Angel
16  PALOMARES-Lopez. PALOMARES arrived and picked up the load of undocumented aliens
17  and transported them to PALOMARES' apartment. The individual accompanied the agents
18  and identified the Arbor Village Apartment complex as the place where PALOMARES resides.

19       9.       Record checks conducted by United States Border Patrol (USBP) Agent L.
20  Rivera through Department of Homeland Security approved databases revealed that Miguel
21  Angel PALOMARES-Lopez, date of birth August 16, 1982, is a citizen and national of Mexico
22  without any legal documents entitling him to be or remain legally in the United States.
23  PALOMARES was formally deported by an immigration judge on January 9, 2006. His arrest
24  history includes six previous arrests by Border Patrol Agents. PALOMARES' immigration and
25  criminal histories are depicted under immigration file number A200097277 and FBI number
26  902830KC2, respectively.

27

28                                          3

1                                          IV

2                              **SIGNIFICANT EVENTS**

3    **EVENT #1**

4         10.    On December 2, 2002 USBP Agents arrested PALOMARES as the driver of a

5    green Ford Explorer, a Sport Utility Vehicle, while attempting to pick up a load of

6    undocumented aliens near the In-Ko-Pah Park Road exit of Interstate 8.  PALOMARES was

7    voluntarily returned to Mexico.

8    **EVENT #2**

9         11.    On December 26, 2005 USBP Agent A. Villanueva, assigned to the Chula Vista

10   Border Patrol station, responded to a report of one suspected undocumented alien who had

11   been observed illegally entering the United States from Mexico.  Agent Villanueva observed a

12   white Nissan Sentra in the area where the suspected undocumented alien was observed

13   entering.    Agent Villanueva activated his fully functioning emergency lights when he

14   approached the white Nissan Sentra.  The driver of the Nissan Sentra, later identified as

15   Miguel Angel PALOMARES-Lopez, accelerated and attempted to flee by driving around the

16   agent's marked vehicle.  The Nissan Sentra made contact with the front end of the agent's

17   marked vehicle which sustained approximately $2500 US dollars in collision damages.

18   PALOMARES exited   the Nissan Sentra and fled the scene.   After a short pursuit

19   PALOMARES was found hiding in the brush and placed under arrest. During a post Miranda

20   interview conducted by USBP Agent A. Kahl, PALOMARES admitted to having been arrested

21   five times previously by USBP. PALOMARES admitted that he was in the area to pick up his

22   undocumented alien brother. PALOMARES also admitted that on December 2, 2002 he was

23   attempting to pick up illegal aliens near the In-Ko-Pah Park Road exit (Event #1).

24   **EVENT #3**

25        12.    On February 20, 2008, Border Patrol Agents assigned to the San Diego North

26   County Smuggling Interdiction Group (SIG) responded to a call by Murrieta Border Patrol

27

28                                          4

1   Agents of a 2000 Pontiac Grand Am sedan bearing California license plate 4HTD890.  The

2   driver of the Pontiac failed to yield to their lights and siren.  SIG Agents caught up to the

3   Pontiac on Interstate 215 near the city of Murrieta California.  SIG Agents followed the Pontiac

4   to a residence located at 14181 Agave Street in Moreno Valley, California.  SIG Agents

5   observed four individuals exit the Pontiac and enter the residence.  SIG Agents approached

6   the residence and conducted a knock and talk.  The occupant of the residence, later identified

7   as Salvador TOSCANO, consented to a search of the residence by the SIG agents.  SIG

8   agents found three individuals, later determined to be undocumented aliens from Mexico

9   illegally in the United States.  TOSCANO and the three undocumented aliens were arrested

10   and transported to the Murrieta Border Patrol station.

11       13.    At the station TOSCANO stated he allowed  his relative  to stay at his house

12   once he had been smuggled into the U.S.  TOSCANO stated that when the Pontiac arrived at

13   his house four individuals entered and someone said they may have been followed.  One of

14   the three undocumented aliens, later identified as Jose ALEJANDRE-Mendez, was

15   determined to be TOSCANO'S relative.  ALEJANDRE stated that once SIG agents knocked

16   on the door the driver of the Pontiac ran out the back exit of the house and was never seen

17   again.

18       14.    An inventory search of the Pontiac produced a photograph depicting a male and

19   female.  A comparison made of this photograph with photographs retrieved from the

20   Department of Homeland Security (DHS) database of Miguel Angel PALOMARES-Lopez show

21   a close resemblance such that the agents believed it to be the same person.

22       15.    Records checks conducted through the DMV revealed the 2000 Pontiac to be

23   registered to a Miguel Angel PALOMARES-Lopez.  Records checks through the Automated

24   Regional justice Information System (ARJIS) revealed that on  February 11, 2008, San Diego

25   Police Officer Ruggiero conducted a vehicle stop on the Pontiac and found the driver to be

26   Miguel Angel PALOMARES-Lopez, date of birth August 16, 1982.

27

28                          5

1    16.    Based on PALOMARES' alien smuggling history, coupled with the photograph

2  found in the Pontiac registered to him, and the recent vehicle stop by San Diego Police in

3  which PALOMARES was identified as the driver of the vehicle, it is the affiant's belief that

4  Miguel Angel PALOMARES-Lopez was the driver of the Pontiac that delivered the

5  undocumented aliens.

6  **EVENT #4**

7    17.    On May 27, 2008 Murrieta Border Patrol Agents received a report from a SIG

8  Agent regarding a 2000 Mitsubishi sedan suspected of transporting undocumented agents.

9  The report included  the California license plate number and physical description of the

10  vehicle.

11    18.    USBP Agent Regalado was observing northbound traffic on Interstate 15

12  between Highway 76 and Mission Road, near the Temecula, California Border Patrol

13  checkpoint.  Agent Regalado observed the 2000 Mitsubishi Eclipse sedan pass his location

14  with three occupants. Agent Regalado attempted a vehicle stop, but the driver of the Eclipse

15  failed to yield.  The Eclipse continued northbound on Interstate 15 and exited at Rancho

16  California where it encountered heavy traffic.  Agent Regalado and USBP Agent Gonzalez

17  approached the vehicle, identified themselves as USBP Agents  and determined that the four

18  occupants of the vehicle, including the driver, were undocumented aliens.  Agents Regalado

19  and Gonzalez arrested all four undocumented aliens and transported them to the Murrieta

20  Border Patrol Station.

21    19.    The driver of the vehicle was prosecuted for violations of Title 8 U.S.C. Section

22  1324 (Alien Smuggling).  Two of the three passengers in the vehicle were retained as material

23  witnesses.  One of the two material witnesses was identified as Luis Miguel MEDINA-Soto.

24    20.    MEDINA admitted to entering the United States illegally.  MEDINA stated he

25  agreed to pay a fee of $3,500 US to be smuggled into the United States. MEDINA stated he

26  was smuggled through the pedestrian lanes of the San Ysidro Port of Entry with an imposter

27

28                                                6

1    document provided to him by an unknown smuggler. Once in the United States, Miguel Angel

2    PALOMARES-Lopez transported MEDINA to PALOMARES' apartment located 4962 Logan

3    Avenue, apartment #2, San Diego, California (**TARGET RESIDENCE**).    PALOMARES

4    harbored MEDINA in his apartment until MEDINA was directed to load into the Mitsubishi

5    Eclipse. MEDINA identified Miguel Angel PALOMARES-Lopez from an array of photographs

6    as the individual who harbored him in his apartment.

7    **EVENT #5**

8        21.    On July 4, 2008 USBP Agent Rivera conducted surveillance at the **TARGET**

9    **RESIDENCE**.    At approximately 7:47 a..m., Agent Rivera observed Miguel Angel

10   PALOMARES-Lopez walk to a red Mercury Cougar bearing California license plate 6CQS801.

11    PALOMARES opened the front passenger door and allowed two unknown Hispanic females

12   to exit the Cougar. Agent Rivera observed another Hispanic male wearing a blue shirt with

13   grey sleeves and blue jeans approach the **TARGET RESIDENCE**. The Hispanic male wearing

14   the blue shirt with grey sleeves motioned with his hand to the unknown Hispanic females as if

15   directing them to come to his location.  The two unknown Hispanic females walked in the

16   direction of the subject and entered the **TARGET RESIDENCE.** PALOMARES allowed

17   another unknown Hispanic male to exit from the rear of the Cougar. The unknown Hispanic

18   male walked in the direction of the **TARGET RESIDENCE** and was guided by the Hispanic

19   male wearing the blue shirt with grey sleeves into the **TARGET RESIDENCE**.

20        22.    At approximately 8:12 a.m. PALOMARES and the Hispanic male wearing the

21   blue shirt with grey sleeves were seen entering the **TARGET RESIDENCE**. At approximately

22   8:20 a.m. the Hispanic male wearing the blue shirt with grey sleeves exited the **TARGET**

23   **RESIDENCE** followed by the unknown Hispanic male and one of the unknown Hispanic

24   females previously seen exiting the Cougar. The unknown Hispanic male and the unknown

25   Hispanic female were walking in a single file line directly behind the Hispanic male wearing the

26   blue shirt with grey sleeves in the direction of the Cougar. All three entered  the Cougar.

27

28                                                7

1   Agent Rivera observed two more unknown Hispanic females exit the **TARGET RESIDENCE**

2   and walk in a single file line to the Cougar and enter the vehicle.   The Hispanic male wearing

3   the blue shirt with grey sleeves exited the Cougar leaving the four unknown Hispanic

4   passengers inside the Cougar and returned to the **TARGET RESIDENCE.**   Within minutes,

5   Agent Rivera observed PALOMARES and the Hispanic male wearing the blue shirt with grey

6   sleeves exit the **TARGET RESIDENCE** and walk towards the Cougar.   After a short

7   conversation, the male wearing the blue shirt with grey sleeves got into the Cougar and

8   departed the area.  Agent Rivera and USBP Agent M. Dover followed the Cougar to a gas

9   station located at 4333 Home Avenue San Diego, California.

10      23.      At the gas station, Agent Rivera observed the Hispanic male wearing the blue

11   shirt with grey sleeves exit the Cougar and open the rear hatch back door allowing the

12   unknown Hispanic male passenger to exit.  The unknown Hispanic male walked to a black

13   Dodge Truck bearing California license plate 8R78177. The driver of the Dodge Truck opened

14   the front passenger door and allowed the unknown Hispanic male to enter.  Agent Rivera

15   observed the driver of the Cougar and the driver of the Dodge meet and appear to have a

16   conversation.  After the short conversation both drivers returned to their respective vehicles

17   and departed the area.

18      24.      Based on the alien smuggling history of PALOMARES coupled with the

19   demeanor displayed by the unknown Hispanic passengers of the Cougar, it is the affiant's

20   belief that the passengers were in fact undocumented aliens.

21                                       **V**

22                                **CONCLUSION**

23      25.      Based on the above information and observations, I believe there is probable

24   cause to search the structure and curtilage of the premises at 4962 Logan Avenue, apartment

25   #2, San Diego, California, for evidence relating to violations of Title 8 U.S.C. 1324, including all

26   items listed in the attachment B.

27

28                                       8

1    26.    Having signed this affidavit under oath, the affiant states that its contents are true

2   and correct to the best of my knowledge, information and belief.

3

4                 JAMIE S. ARNOLD
                       Special Agent

5                 Federal Bureau of Investigation

6

7

8   SUBSCRIBED and SWORN to before me
   this day _9_ of July 2008.

9

10  WILLIAM MCCURINE, JR.
    U.S. Magistrate Court Judge

11  United States District Court
    Southern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                            9

## ATTACHMENT A

The residence to be searched is located at 4962 Logan Avenue, apartment #2, San Diego, California.  The residence is located within the Arbor Village Apartment complex. The apartment complex is comprised of several individual and detached two story buildings with each building numbered separately.  The residence is found on the first floor of the building numbered 4962 and is labeled apartment #2.  The number "2" is centered and affixed to the door of the residence which is painted green.  The color of the building is beige and there are two apartments per floor per building.  There is a set of concrete stairs in the center of each building, running perpendicular.  Building 4962 is located on the north side of Logan Avenue and the doors of each apartment of the building face to the north, centered on a courtyard.  Each apartment contains a sliding glass door that on the top floor leads to a balcony and the ground floor lead to a small fenced-in patio.

Photographs of the target residence are included as Attachment A-1, A-2 and A-3 and are incorporated herein by reference.



A-1



A - 2

A - 3

## ATTACHMENT B - PROPERTY TO BE SEIZED

a.      Identification documentation, including passports and any United States Government documentation relating to the alienage of illegal aliens;

b.      Travel documents and correspondence, both domestic and foreign, relating to alien smuggling arrangements and itineraries;

c.      Airline/airfare, bus or train tickets relating to the travel of illegal aliens;

d.      Lists containing names of organizers, participants, associates or other co-conspirators involved in bringing illegal aliens into the United States and transporting illegal aliens within the United States;

e.      "Pay/Owe" sheets or similar ledgers/lists containing names of smuggled aliens along with their destinations and fees paid or to be paid;

f.      Documents pertaining to vehicle registration for vehicles used in the smuggling and transporting of illegal aliens;

g.      Financial records, bank statements, money orders, money order receipts, and cash that are evidence of payments made by illegal aliens to alien smugglers;

h.      Documents showing possession, dominion, and/or control of premises, including utility statements, telephone statements, rental agreements, photographs and bills addressed to the premises to be searched;

i.      Property of smuggled aliens in the form of wallets, purses, suitcases, tote bags, clothing and identification; and

j.      Communications equipment such as pagers, cell telephones, digital telephones, and two-way radios and counter surveillance equipment used to detect police activities and surveillance, including radio scanners, and wire transmitter detectors.

All of which is evidence of offenses in violation of Title 8, United States Code, Section(s): 1324 (a) (1) (A) (iii) (Harboring Aliens); 1324 (a) (1) (A) (ii) (Transportation of Aliens); and Conspiracy to Harbor and Transport Aliens in violation of Title 8, U.S.C. Sections 1324 (a)(1)(A)(v)(I), 1324(a)(1)(A) (iii) and 1324 (a)(1)(A)(ii).